Date Signed:
December 18, 2014



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re BAY WEST KAILUA BAY, L.L.C.,<br><br>Debtor. | Case No. 11-03124<br>Chapter 7 |
| ELIZABETH A. KANE, Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., as trustee,<br><br>Defendant. | Adv. Pro. No. 13-90045<br><br><br><br><br>Re: Dkt. No. 58 |

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The trustee in this bankruptcy case filed this adversary proceeding alleging that certain payments the debtor made to the defendant were constructively fraudulent. The defendant, Bank of America, N.A. ("BOA"), seeks summary judgment on the trustee's two counts for constructive fraudulent transfer. I conclude that BOA has

not negated all issues of fact or shown that it is entitled to judgment as a matter of law. Therefore, the motion is DENIED.

I.   BACKGROUND

The debtor, Bay West Kailua Bay, L.L.C. ("Bay West"), was owned by three men: Jonathan McManus, Jerry Lynch, and Craig Vallely. Bay West in turn wholly owned an entity called KB Napa Holdings LLC ("KB Napa").

The parties agree that KB Napa's primary–if not sole–business was owning a piece of real estate in Napa, California, which was leased to the Robert Mondavi winery. In 2005, KB Napa acquired the Napa property and assumed a debt secured by that property. The security includes a mortgage and an assignment of lease rents ("ALR").

BOA held the secured debt. The parties agree that BOA's interest in the Mondavi lease and rental proceeds was perfected.

The ALR purports to operate as an unconditional assignment of the lease and the rental proceeds. The ALR also provides, however, that it would become void when the debt was repaid and that KB Napa had a license to collect and use the lease rents until the occurrence of an Event of Default.

Beginning in 2005 and continuing through 2009, KB Napa deposited the rental income from the Napa property in Bay West's bank account. Bay West then used that income for its own purposes and also paid KB Napa's secured debt on the Napa

property that KB Napa owned.

In 2008, Craig Vallely died. After his death, the other owners agreed to buy Mr. Vellely's widow's interest in the business. As part of the buy-out agreement, Bay West transferred its interest in KB Napa to Chelsea Consulting, LLC, which Mr. McManus and Mr. Lynch owned. Chelsea assumed the Napa property loan and the ALR.

After Chelsea assumed the loan obligations, Mr. McManus and Mr. Lynch hired a consultant. The consultant advised the bookkeeper handling the companies' affairs to set up a new bank account for Chelsea. The bookkeeper testified that amidst "the severe downturn in the U.S. financial and real estate markets" she was "dealing with serious cash flow issues."[1] As a result, she "inadvertently did not set up [the] new account for Chelsea."[2] So Chelsea continued to deposit in Bay West's account all of the rental proceeds, and Bay West continued to pay BOA, through November 2010.

In 2011, Bay West filed for bankruptcy and a trustee was appointed. Later, the trustee filed this adversary proceeding, in which she seeks to avoid and recover all the mortgage payments that the debtor paid to BOA. The trustee alleges that the payments were constructively fraudulent under the bankruptcy code and Hawaii's Uniform Fraudulent Transfers Act ("UFTA").

---

[1] Dkt. 59-3 at 2.

[2] Dkt. 59-3 at 2.

3

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] In resolving a summary judgment motion, the court does not weigh evidence, but rather decides only whether a material factual dispute remains for trial.[4] To determine this, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the nonmoving party.[5] When the nonmoving party bears the ultimate burden of proof at trial, the moving party will prevail "if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."[6]

## III. DISCUSSION

To prevail in this case, the trustee must prove that (1) the debtor transferred property in which it had an interest, (2) the debtor did not receive reasonably equivalent value for the transfer, and (3) the debtor was insolvent or

---

[3] Fed.R.Civ.P. 56(a), Fed. R. Bankr.P. 7056; *see also Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir.2008).

[4] *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997).

[5] *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir.2009).

[6] *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14 (2d Cir. 1995); *see also In re Oracle Corp. Securities Litigation*, 727 F.3d 376, 387 (9th Cir. 2010) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.").

U.S. Bankruptcy Court - Hawaii   #13-90045   Dkt # 69   Filed 12/18/14   Page 4 of 12

undercapitalized.[7]

BOA argues that it is entitled to judgment as a matter of law on two grounds. First, it argues that the transfers were not transfers of an interest in Bay West's property. Second, it argues that even if they were, Bay West received reasonably equivalent value for the transfers. Neither assertion justifies summary judgment.

**A.     The Debtor Did Have an Interest in the Money It Transferred.**

BOA gives three reasons why the debtor did not have an interest in the money it sent to BOA.

*1.     Assignment of Lease and Rents Theory*

First, BOA argues that because both KB Napa and Chelsea assigned their interests in the rental proceeds from the Napa property to BOA, the proceeds belonged to BOA, not Bay West.[8] At first glance, the assignment of lease rents (ALR) does appear to transfer ownership of the rental proceeds to BOA. By the terms of the ALR, KB Napa, and then Chelsea, transferred "its interest as lessor in and to all Leases and all Rents"[9] to BOA.

But this reasoning ignores California law. Section 2938 of the California Civil Code provides that a recorded, written assignment of leases and rents "made in

---

[7] Haw. Rev. Stat. § 651C-4; 11 U.S.C. § 548(a)(1)(B).

[8] Dkt. 58-1 at 20.

[9] Dkt. 59-8 at 2.

U.S. Bankruptcy Court - Hawaii   #13-90045   Dkt # 69   Filed 12/18/14   Page 5 of 12

connection with an obligation secured by real property" creates a perfected security interest "*irrespective* of whether the assignment is denoted as absolute, absolute conditioned upon default, additional security for an obligation, or otherwise . . . ."[10] Thus, under California law, BOA was a secured creditor, not an owner of the rents.

BOA argues, however, that under Hawaii law, an assignment of rents gives the assignee "title to the rental proceeds . . . ."[11] This argument fails for two reasons. First, Hawaii law does not apply to interests in California real property. Second, BOA misstates Hawaii law. BOA quotes from a Hawaii Supreme Court opinion describing an absolute assignment of rents. But BOA fails to point out that the Hawaii Supreme Court was actually quoting from the Intermediate Court of Appeals decision that the Supreme Court *reversed*. The Supreme Court held that "public policy weighs against construing assignment of rents clauses as absolute assignment[s] absent a clear indication that the parties intended to create one."[12]

The ALR itself makes clear that it was intended as security; the ALR granted KB Napa and Chelsea a license to "collect and use . . . all Rents . . . " prior to an Event of Default; BOA agreed that, if it collected more rents than the amount of the

---

[10] Cal. Civ. Code § 2938(a), (b) (2014) (emphasis added).

[11] Dkt. 58-1 at 22 (quoting *Haw. Nat'l Bank v. Cook*, 100 Haw. 2, 9, 58 P.3d 60, 67 (Haw. 2002)).

[12] *Haw. Nat'l Bank v. Cook*, 100 Haw. 2, 10, 58 P.3d 60, 68 (2002).

6

U.S. Bankruptcy Court - Hawaii #13-90045 Dkt # 69 Filed 12/18/14 Page 6 of 12

loan that was then due, BOA would promptly return the surplus to the borrower; and the ALR became void upon repayment of the secured debt.[13] These provisions demonstrate that the ALR was intended to secure the loan.

Under both California and Hawaii law, BOA did not own the rents. BOA's argument based on the ALR fails.

    2.    *Conduit Theory*

BOA's next theory is that Bay West did not own the funds; rather, KB Napa (and later Chelsea) owned the money, and Bay West was a "mere conduit."[14]

This is a misapplication of the "mere conduit" concept. The idea was developed to decide whether a person is a "transferee" from whom an avoidable transfer can be recovered. In other words, the doctrine amounts to a judicial definition of the term "transferee" under the Bankruptcy Code and comparable state statutes. The doctrine was never meant to define ownership rights in property. Therefore, I doubt that the "mere conduit" concept even applies in this context.

Assuming for the sake of argument that the concept applies, Bay West was not a "mere conduit." In the Ninth Circuit, the question whether a person is a "mere

---

[13] Dkt. 59-8 at 3, 4, 5.

[14] Dkt. 58-1 at 24.

U.S. Bankruptcy Court - Hawaii   #13-90045   Dkt # 69   Filed 12/18/14   Page 7 of 12

conduit" depends on whether the person has dominion over the asset.[15] Under that test, a person has dominion over an asset if he is he has the right to "put the money to [his] own purposes."[16] Or, as the Seventh Circuit put it, whether he is "'free to invest the whole [amount] in lottery tickets or uranium stocks.'"[17]

The evidence in the record indicates that Bay West had dominion over the funds. There is no evidence of any agreement between Bay West and KB Napa or Chelsea that restricted Bay West's ability to use the money for any purpose it wished. In fact, the record shows that Bay West regularly used the money for its own purposes, and sometimes used so much of the money for its own purposes that it had to gather money from other subsidiaries and affiliates to make the payments to BOA. Therefore, BOA has not established that Bay West was a "mere conduit" between KB Napa or Chelsea and BOA.

A related, but similar, theory BOA puts forth is the so-called "earmarking doctrine." The evidence does not support this theory. There is no evidence that KB Napa or Chelsea required Bay West to use the money only to pay BOA. Further, Bay West commingled the rent proceeds with other funds in its bank account, and there is

---

[15] *Mano-Y&M, Ltd. v. Field (In re The Mortgage Store)*, No. 13-16020, 2014 WL 6844630, at 5 (9th Cir. Dec. 5, 2014) ("The proper standard is the *In re Incomnet* dominion test.").

[16] *Id.* at 3 (quoting *Universal Serv. Admin. Co. v. Post-Confirmation Comm. Of Unsecured Creditors of Incomnet Commc'n Corp. (In re Incomnet)*, 463 F.3d 1064, 1071 (9th Cir. 2006)).

[17] *Id.* at 3 (quoting *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 894 (7th Cir. 1988)).

U.S. Bankruptcy Court - Hawaii  #13-90045  Dkt # 69  Filed 12/18/14  Page 8 of 12

no evidence that the rental proceeds can be traced to the BOA payments. Additionally, there is no evidence that the funds were earmarked or segregated for the purpose of paying BOA.

### 3. Constructive Trust Theory

Finally, BOA argues that the rental proceeds were subject to a constructive trust, such that Bay West did not own them.

An equitable trust is not appropriate here. A court may impose an equitable trust on a person when he acquired the property "in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest."[18]

BOA argues that Chelsea paid the rental proceeds to Bay West by mistake. After KB Napa transferred the real estate to Chelsea, an accounting consultant told the bookkeeper to open a separate account for Chelsea. The bookkeeper did not do so because she was too busy. At the time, this probably did not seem important, because all three entities were controlled by Mr. McManus and Mr. Lynch. But in any event, this was not the kind of "mistake" that would support an equitable remedy at the expense of Bay West's innocent creditors.[19] In essence, Chelsea and Bay West

---

[18] *Small v. Badenhop*, 701 P.2d 647, 655 (Haw. 1985).

[19] The Bankruptcy Appellate Panel in this circuit has expressed a policy preference to not apply equitable remedies post-petition when doing so would be unfair to other creditors. *See, e.g.*, *Taxel v. Chase Manhattan Bank (In re Deuel)*, 361 B.R. 509, 518 (B.A.P. 9th Cir. 2006). Here, KB Napa and Chelsea did not have a constructive trust. But even if there were a right to a constructive trust, KB Napa and Chelsea were only, at best, unsecured creditors. *In re Markair, Inc.*, 172 B.R. 638, 642 (B.A.P. 9th Cir. 1994) ("The incipient beneficiary of a constructive trust has no rights greater than

9

U.S. Bankruptcy Court - Hawaii   #13-90045   Dkt # 69   Filed 12/18/14   Page 9 of 12

thought about restructuring their affairs but failed to follow through. Nothing about the transactions and the facts in the record suggest that this was in any way unfair or that Bay West could not "in good conscience retain the beneficial interest."

Further, the tracing doctrine limits constructive trust claims.[20] BOA has offered no evidence that the rental proceeds are traceable to the payments it received.

### B. BOA Has Not Proven That the Debtor Received Reasonably Equivalent Value for its Payments on the Napa Property Mortgage.

BOA argues that Bay West benefitted when it paid the BOA debt. BOA's argument focuses mostly on the fact that, under UFTA, "value is given for a transfer . . . if in exchange for the transfer . . . an antecedent debt is . . . satisfied . . . ."[21] But in most cases this only applies if the transferee owes the debt.[22] Ordinarily, a transferor receives no benefit or value when it pays someone else's debt.

Bay West owed no debt to BOA, so it received no direct benefit when it paid BOA.

---

any other creditor of the debtor who has not reduced his claim to judgment and perfected it.").

[20] *See, e.g.*, *Taylor Associates v. Diamant (In re Advent Management Corp.)*, 178 B.R. 480, 488 (B.A.P. 9th Cir. 1995) ("The beneficiary is not entitled to a constructive trust if it cannot trace the trust res into its succeeding transfigurations.") (applying California law); *see also Wery v. Pacific Trust Co.*, 33 Haw. 701, 713 (1936) ("In a purchase-money constructive trust the money used must be traceable to the trust res, in effect constitute the consideration for or the purchase money of the trust res.")

[21] Haw. Rev. Stat. § 651C-3(a).

[22] *In re Lucas Dallas, Inc.*, 185 B.R. 801, 807 (B.A.P. 9th Cir. 1995); *In re Agricultural Research & Technology Group, Inc. (Hayes v. Palm Seedlings Partners-A)*, 916 F.2d 528, 540 (9th Cir. 1990).

10

U.S. Bankruptcy Court - Hawaii   #13-90045   Dkt # 69   Filed  12/18/14   Page 10 of 12

BOA argues that Bay West benefitted at least while its subsidiary, KB Napa, owned the property. According to BOA, by paying the debt, Bay West avoided a foreclosure on the property and preserved the value of its ownership interest in KB Napa.

In theory, a parent entity can benefit from payments of a subsidiary's debt. One framework courts in this circuit use to determine whether a debtor received reasonably equivalent value for payments that benefit a subsidiary is the *Rubin* rule, which acknowledges that indirect benefits to the debtor can constitute "value."[23] Applying this rule requires a detailed inquiry into the facts of the case.[24] Courts presume that a parent's payments that benefit a subsidiary are "of nominal value" to the parent, unless there is contrary evidence proving that some "clear and tangible benefit" accrued to the parent.[25] The benefit, though, must conform to the Ninth Circuit's holding that "any consideration not involving utility for the creditors [of the debtor]" is not value.[26]

There is no evidence that the payments benefitted Bay West at all, much less in

---

[23] *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991-92 (2d Cir. 1981).

[24] *Id.* at 993-94.

[25] *Parajo Dunes Rental Agency, Inc. v. Spitters (In re Pajaro Dunes Rental Agency, Inc.)*, 174 B.R. 557, 579 (Bankr. N.D. Cal. 1994).

[26] *Hayes v. Palm Seedlings Partners (In re Agricultural Research and Technology Group, Inc.)*, 916 F.2d 528, 540 (9th Cir. 1990).

11

an amount reasonably equivalent to the payments it made. Therefore, there are material issues of fact about whether the debtor received reasonably equivalent value.

At the hearing on the motion, BOA argued that it was the trustee's burden to prove that the debtor did not receive reasonably equivalent value. This is wrong for two reasons. First, the trustee has the benefit of the presumption that paying the debts of a subsidiary is only of nominal value to the debtor and its creditors. BOA is entitled to summary judgment only if it can overcome this presumption, and BOA has not done so. Second, on a motion for summary judgment, the moving party has the burden to "prove that there is an absence of evidence to support the non-moving party's case."[27] BOA failed to carry its burden.

Further, BOA concedes that Bay West got no benefit from the payments it made while Chelsea owned the property, because Chelsea was not a subsidiary of Bay West.

## IV. CONCLUSION

Therefore, the defendant's motion is DENIED.

**END OF MEMORANDUM**

---

[27] *Oracle Corp.*, 627 F.3d at 387.

U.S. Bankruptcy Court - Hawaii   #13-90045   Dkt # 69   Filed  12/18/14   Page 12 of 12